UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CANARY DATE SCULPTING, INC.  Plaintiff
D/B/A CANARY TREE SERVICE

v.  Civil Action No. 3:24-cv-00474-RGJ-CHL

KENTUCKY FARM BUREAU MUTUAL  Defendant
INSURUANCE COMPANY

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Kentucky Farm Bureau ("Farm Bureau") moves to dismiss Canary Date Sculpting, Inc. d/b/a Canary Tree Service's ("Canary") complaint pursuant to Fed. R. Civ. P. 12(b)(6). [DE 6]. Canary responded, [DE 8], and Farm Bureau replied. [DE 9]. The matter is ripe. For the reasons that follow, Farm Bureau's motion to dismiss is **GRANTED in part** and **DENIED in part**.

**I.     BACKGROUND**

Canary initiated this case as the purported assignee of fifteen insured homeowners. [DE 1 at 2–6]. According to Canary, after a tornado significantly damaged the homeowners' properties, it provided tree removal services for the homeowners, who then assigned their insurance benefits to Canary. [*Id.* at 6–8]. For its work, Canary demanded payment from Farm Bureau under each insurance policy. [*Id.* at 9]. Canary alleges that Farm Bureau "accepted coverage under each policy but grossly underpaid each claim thereby breach [sic] said contracts." [*Id.* at 10]. The complaint asserts that Farm Bureau breached the insurance policies (Count 1) and violated the Kentucky Unfair Claims Settlement Practices Act ("UCSPA") (Count 2). [*Id.* at 9–10].

Farm Bureau moved to dismiss for failure to state a claim under Rule 12(b)(6), arguing that (1) Canary engaged in price gouging and unfair trade practices and cannot profit from its unlawful acts, (2) the purported assignment of benefits was invalid and thus Canary lacks standing to bring a breach of contract claim, and (3) Canary's action is barred by the one-year contractual limitations period set forth in the Farm Bureau policy. [DE 6 at 228, 232, 237]. With its motion, Farm Bureau attached several exhibits, including a letter from the Michigan Attorney General's Office, [DE 6-2], litigation documents from other lawsuits, [e.g., DE 6-3; DE 6-4; DE 6-5], orders from county judges, [DE 6-6; DE 6-7], and its insurance policies, [e.g., DE 6-8; DE 6-9; DE 6-10]. Canary responded and attached additional exhibits, including photographs of heavy equipment, [DE 8-1], invoices, [DE 8-2], labor rates, [DE 8-3], and bank records, [DE 8-4].

The Court ordered the parties to submit supplemental briefs addressing the following issues: (1) whether the Court may properly assert diversity jurisdiction; (2) whether the case should be transferred to the Paducah division; and (3) whether the Court should rule on the merits of Farm Bureau's motion to dismiss despite the breadth of attached exhibits and the parties' indication that they would be filing motions for summary judgment [DE 24]. Both parties filed their supplemental briefs on August 12, 2025.

## II.     DISCUSSION

### A. Diversity Jurisdiction

Canary, a Florida corporation with its principal place of business in Jacksonville, Florida, filed this suit seeking $462,810.24 against Farm Bureau, a Kentucky insurance company that only writes insurance in the Commonwealth of Kentucky. [DE 1 ¶ 20; DE 7 at 381]. The homeowners (that is, the purported assignors) are all Kentucky citizens. [DE 1 at ¶¶ 1–16]. The complaint invokes this Court's jurisdiction under 28 U.S.C. § 1332, noting that the Plaintiff and Defendant

are citizens of different states and the amount in controversy exceeds $75,000. [DE 1 ¶¶ 19–22]. While Farm Bureau did not challenge the Court's jurisdiction, the Court requested supplemental briefing on the issue of diversity jurisdiction pursuant to its "independent obligation to determine whether subject-matter jurisdiction exists. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006); *see also Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1064 (6th Cir. 2014). Specifically, the Court requested that the parties address 28 U.S.C. § 1359, which provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." *See also* 6A Wright & Miller's Federal Practice & Procedure § 1557 (2025); 4 Moore's Federal Practice § 17.13 (2025).

In its supplemental brief, Farm Bureau now asserts that Canary's alleged assignments are insufficient to invoke diversity jurisdiction based on two arguments. [DE 26 at 513–14]. First, it asserts that Canary's alleged assignments from the homeowners are "void and not valid" and therefore Canary is not "the real party in interest." [*Id.*]. In support, Farm Bureau references its motion to dismiss argument that the language of Canary's alleged assignment did not create a legally enforceable assignment of rights. [DE 6 at 232]. Second, Farm Bureau argues that "the lawsuit was contemplated by Canary when it generated these assignments" and thus the assignments were improperly made for the purpose of invoking the Court's jurisdiction. [DE 26 at 514-15]. In support of its contention that Canary created the assignments for the express purpose of invoking diversity jurisdiction, Farm Bureau offers demand letters "purportedly drafted and signed by the Farm Bureau insureds," which state, "I wanted to take this opportunity, prior to filing a lawsuit, to make a formal demand for settlement." [*Id.*]. Farm Bureau theorizes that these letters, which contemplated litigation, were in fact fabricated by Canary and thus serve as evidence of

3

Canary's collusion to obtain an assignment of rights for the purpose of manufacturing federal jurisdiction. [*Id.* at 515]. Canary, for its part, argues that the assignments were genuine and not motivated by a desire to create diversity because "[a]t the time the assignments were entered into the Plaintiff did not anticipate that it would be involved in litigation to recover reasonable payments for the extensive services it rendered on behalf of the assignors." [DE 25 at 509-10]. Canary notes that all assignments were executed in December 2021 when it performed the tree removal services. [*Id.*].

To address Farm Bureau's argument that the assignments are void and thus incapable of serving as the basis for diversity jurisdiction, it is necessary to evaluate the language of the assignments. Each assignment of benefits states, in relevant part:

> This is an assignment of a claim for damages for Emergency Tree Work is [sic] made and effective [date].
>
> . . .
>
> [Homeowner] (the "Assignor") resident under the laws of Kentucky . . . AND, (CTS) Canary Tree Service the ("Assignee") a corporation organized and existing under the laws of Florida . . . . FOR VALUE RECEIVED, The Assignor hereby transfers to The Assignee any and all claims, demands and cause or causes of action of any kind whatsoever which the Assignee has or may have against Farm Bureau, arising from the following type of claim: EMERGENCY TREE WORK.
>
> . . .
>
> I [homeowner] give Farm Bureau authorization to speak to a rep from the assignee. And the Assignee may in its own name and for its own benefit prosecute, collect, settle, compromise, and grant release of said claim as in its sole discretion deems advisable. The parties have executed this Assignment on the date written.
>
> . . .
>
> I authorize Farm Bureau insurance company to pay the "assignee" directly on claim number [corresponding claim number].

[DE 1-2–DE 1-16]. As Farm Bureau points out, the assignment confusingly states that the "Assignor hereby transfers to The Assignee any and all claims . . . which the *Assignee* . . . may have against Farm Bureau." [*Id.* (emphasis added); DE 6 at 232]. That is, the language purports to assign to Canary any claims that *Canary* may have against Farm Bureau. In Farm Bureau's mind, this makes the attempted assignment invalid. [DE 6 at 232-33]. Canary, meanwhile, points to the rest of the assignment, which clarifies that the "[a]ssignee may in its own name" collect on the claim and "authorize[s] Farm Bureau insurance company to pay the 'assignee' directly" on the claim. [DE 8 at unknown PageID #, document p. 9].

The "purpose [of 28 U.S.C. § 1359] is to prevent the manufacture of diversity jurisdiction, so as to avoid 'a vast quantity of ordinary contract and tort litigation [being] channeled into the federal courts.'" *Vreba-Hoff Operations v. Van Zelst*, 475 F. Supp. 3d 757, 760 (N.D. Ohio 2020) (quoting *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828–29 (1969)). In short, a party may not "create diversity by collusively assigning his interest in an action." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014) (citing *Kramer*, 394 U.S. at 825–830); see also *Fowler v. Coals*, 418 F. Supp. 909, 911 (E.D. Tenn. 1976). Courts have found that a "party . . . has been improperly or collusively made or joined" when "the primary aim of the [assignment] is to manufacture federal jurisdiction." 28 U.S.C. § 1359; *Gross v. Hougland*, 712 F.2d 1034, 1037-38 (6th Cir. 1983).

In *Kramer*, the Supreme Court found that an assignment was improperly or collusively made in light of several factors:

> (1) the assignor retained a substantial interest in the outcome of the suit since the assignee, in a later transaction, reassigned ninety-five per cent of the proceeds of the suit to the corporation; (2) the assignee lacked an independent and legitimate interest in the suit which predated the assignment; (3) the assignee stood to lose little more than his time and fee if the suit proved unsuccessful since he gave only one dollar as consideration for the assignment; and (4) the assignee admitted that

5

the assignment was motivated in substantial part by a desire to create diversity of citizenship.

*Fowler*, 418 F. Supp. at 911–12 (discussing *Kramer*, 394 U.S. 823); *see also* 13F Wright & Miller's Federal Practice & Procedure § 3639 (2025). "Several district courts, relying on *Kramer*, have adopted a two-pronged test." *Fowler*, 418 F. Supp. at 912. "[A]n assignment falls within the scope of § 1359 [1] if the assignment is not real, but merely colorable, and [2] if the desire to create diversity of citizenship motivates the colorable assignment." *Vreba-Hoff Operations*, 475 F. Supp. 3d at 761; *see also Fowler*, 418 F. Supp. at 912. Under the first prong, an assignment is considered "merely colorable" if the "assignor retains a substantial interest in the outcome of the assigned claim." *See Fowler*, 418 F. Supp. at 912.

As to the first prong, Canary's assignment is real and not "merely colorable" because the homeowner/assignors expressly relinquished to Canary any continuing right to pursue their claims. In *Fowler*, the court found that an assignment was colorable rather than real because the plaintiff stood to receive only "one-tenth of one per cent of the potential proceeds of the litigation," while the purported assignor retained an interest in the remainder. *Id.* The court noted that the assignment "by its own terms, did not purport, nor was it intended, to transfer anything to plaintiff but a potential bonus and the power to control the litigation." *Id.* Here, by contrast, each homeowner/assignor signed a document granting "sole discretion" to Canary to "prosecute, collect, settle, compromise, and grant release of [the] claim" in "[Canary's] own name and for its own benefit." [*See* DE 1-2–DE 1-16]. Courts have relied on such provisions that expressly disavow any continuing interest in the litigation or its proceeds on the part of the assignor to support a finding that an assignment did not violate § 1359. *See Dweck v. Japan CBM Corp.*, 877 F.2d 790, 193 (9th Cir. 1989) (citing *R.C. Hedreen Co. v. Crow Tribal Hous. Auth.*, 521 F. Supp. 599, 607 (D. Mont. 1981); *Nagle v. LaSalle Nat'l Bank*, 472 F. Supp. 1185, 1190 (N.D. Ill. 1979)). In

6

contesting the validity of the assignment, Farm Bureau primarily focuses on one part of the assignment, which, as discussed, states that "[t]he Assignor hereby transfers to The Assignee any and all claims . . . which the Assignee has or may have against Farm Bureau." [DE 26 at 514]. This "poor draft[ing]," as Farm Bureau puts it, [DE 6 at 233], should not alone eliminate diversity jurisdiction under § 1359, particularly when the other language in the assignment shows the homeowners' intentions to transfer their *own* rights to Canary. Moreover, while Farm Bureau claims that this language makes the assignments void, it also admits that "Plaintiff has received payments from [Farm Bureau] for some services." [DE 6 at 226]. That is, Farm Bureau has already paid Canary for a portion of the claims, seemingly because it believed the assignments were in fact valid. In short, the ill-drafted language of the assignment does not compromise the purpose of § 1359, which is to prevent the collusive manufacture of diversity jurisdiction.

The second prong requires that the assignment be motivated not by a desire to create diversity, but by a "legitimate business purpose unconnected with the creation of diversity jurisdiction." *Vreba-Hoff Operations*, 475 F. Supp. 3d at 761–62. Thus, in *Kramer*, the Supreme Court found that an assignment was motivated by a desire to create diversity when the assignee promised to pay back the assignor for ninety-five percent of recovery on the assigned cause of action, the assignee previously lacked any connection with the matter, and the assignee commenced the lawsuit shortly after he was assigned the assignor's interest. *Kramer*, 394 U.S. at 824, 827-28. Canary's assignments differ from the one at issue in *Kramer* in several respects. First, there is no evidence that the assignee—Canary—agreed to pay back the assignors while reserving merely a small fee for itself. Second, Canary had a previous connection with the claim because it performed the tree removal services for which it later demanded payment. Third, Canary asserts— and Farm Bureau does not dispute—that the assignment took place at the time the services were

7

performed, [DE 25 at 509–10], not years later right before the commencement of litigation. Farm Bureau nonetheless asserts that the assignment was collusive, pointing to the payment demand letters it received from homeowners shortly after the December 2021 storms. [DE 26 at 514-15]. Farm Bureau states that the letters suggested that the insureds would be the ones filing lawsuits, but that "it appears possible that these letters were fraudulently fabricated by Canary (instead of the insureds) in contemplation of filing suit." [*Id.* at 515]. Farm Bureau claims that these letters were dated on the same day as the assignments, which means that "[t]he lawsuit was contemplated by Canary when it generated the assignments." [*Id.* at 515]. Farm Bureau offers no evidence, however, that these letters were fabricated by Canary. Even if they were, the threat of a lawsuit does not alone imply that the insureds' rights were assigned to Canary for the sole purpose of creating diversity for a lawsuit.

Accordingly, the Court finds that 28 U.S.C. § 1359 does not preclude the exercise of diversity jurisdiction under 28 U.S.C. § 1332. Because Canary and Farm Bureau are citizens of different states and the amount in controversy exceeds $75,000, the Court has jurisdiction under 28 U.S.C. § 1332.

### B. Motion to Dismiss

Having determined that jurisdiction is proper, the Court will now address the merits of Farm Bureau's motion to dismiss. Because both parties filed several exhibits that exceed the scope of Canary's complaint, the Court will first assess which exhibits may be considered at this stage.

#### 1. Exhibits That Can Be Considered at the Motion to Dismiss Stage

Recognizing that both Canary and Farm Bureau presented exhibits outside the scope of Canary's complaint, the Court ordered the parties to submit supplemental briefs addressing whether the Court should rule on Farm Bureau's 12(b)(6) motion. [DE 24 at 505–06]. In response,

Farm Bureau withdrew certain arguments that rested on exhibits outside the scope of Canary's complaint and asked that the Court rule on its pending motion. [DE 26 at 617–18]. Specifically, Farm Bureau conceded that the following exhibits are not referred to in Canary's complaint: (1) the Orders of the Marshall County and Graves County Judge Executives, [DE 6-6; DE 6-7], the cease and desist letter to Canary from the Michigan Attorney General, [DE 6-2], and the Complaints of the Michigan Attorney General, the North Carolina Attorney General and the Kentucky Attorney General against Canary [DE 6-3; DE 6-4; DE 6-5]. Therefore, Farm Bureau "withdraws these arguments from its 12(b)(6) motion." [DE 26 at 518]. Farm Bureau maintains that the Court can consider Canary's alleged assignments, [DE 1-2–1-16], and Farm Bureau's insurance policies, [DE 6-8–6-10], "without converting Farm Bureau's 12(b)(6) motion to one for summary judgment." [*Id.* at 518]. Farm Bureau therefore asks the Court to rule on the entirety of Section III of its motion to dismiss, which argues that Canary lacks standing to sue on either the breach of contract or UCSPA claim because (1) Canary did not obtain a valid assignment of benefits, [DE 6 at 232], (2) no other contractual relationship exists between Canary and Farm Bureau, [*Id.* at 235], and (3) Canary's action was not filed within the contractual limitations period. [*Id.* at 237].

"As a general matter, a Rule 12(b)(6) motion should be decided solely on the complaint." *Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024). However, the Court may also consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

9

Because Farm Bureau concedes that the orders of the Marshall County and Graves County Judge Executives are not referenced in the complaint, they should not be considered at the motion to dismiss stage. As a result, the Court will not consider Section 1.C of Farm Bureau's motion to dismiss, which relies solely on these orders. [DE 6 at 229–30]. Likewise, the Michigan attorney general cease and desist letter, which Farm Bureau references as support for its contention that Canary was engaged in price gouging, was not referenced in the complaint and therefore will not be considered. Finally, the three state attorney generals complaints cited by Farm Bureau as evidence of Canary's price gouging will not be considered because they are outside the scope of Canary's complaint. The assignments of benefits, however, may be considered because they were attached to Canary's complaint as exhibits A–O and incorporated by reference in the complaint. [DE 1 ¶ 47]. Similarly, Farm Bureau's insurance policies, which Farm Bureau attached to its motion to dismiss, may be considered because the policies are both referenced in Canary's complaint and are central to Canary's claims that it is owed money as the assignee of the benefits under these policies. [DE 1 ¶¶ 22-38, 53-56, 60-61].

Canary's exhibits that it attached to its response, which include photographs of heavy equipment, invoices, labor rates, and bank records, are not referenced in Canary's complaint, nor are the exhibits central to Canary's claims. Rather, Canary provided these exhibits in response to Farm Bureau's argument that Canary was engaged in price gouging. [DE 8 at unknown PageID #, document p. 3–4]. As a result, the Court will not consider these exhibits at this juncture.

### 2. 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v.*

10

*Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Dismissal under Rule 12(b)(6) is warranted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

  Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Rather, to determine whether the plaintiff set forth a "plausible" claim, the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to

11

the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

### 3. Breach of Contract (Count 1)

Farm Bureau's insurance policies state that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." [DE 6-8 – DE 6-10]. Canary asserts in its complaint that all the damage to the homeowner/assignors' properties occurred "[o]n or about December 11, 2021." [DE 1 ¶ 40]. Yet Canary did not bring this action until 2024, more than one year after the limitations period specified in the Farm Bureau insurance policies. [DE 6-8 – DE 6-10]. Pursuant to these facts, Farm Bureau asserts that Canary's breach of contract action is barred by the limitations period set forth in its insurance policies. [DE 6 at 237].

"Kentucky law has long recognized 'the validity of insurance contract provisions requiring as a condition to sue that the action must be "commenced within the time specified by the policy."'" *Wooton v. Kentucky Farm Bureau Mut. Ins. Co.*, No. 2014-CA-000318-MR, 2015 WL 860752, at *2 (Ky. App. Feb. 27, 2015) (quoting *Edmondson v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 756 (Ky. 1989)). "Courts typically will enforce such provisions unless they unreasonably limit the time in which a party can file an action." *Id.* Thus, "absent an inhibitive statute," an insurance policy may include "a limitation for a period shorter than that provided by the statute." *Id.* In *Webb v. Kentucky Farm Bureau Insurance Co.*, the Court of Appeals of Kentucky noted:

> In Kentucky, there is no statute proscribing contractual shortening of limitation periods. In fact, there is a provision in the Insurance Code, KRS 304.14-370, which allows foreign insurers to limit actions against them to one year. While we do not believe this provision is conclusive as to the question before us, we are of the opinion that a statutory provision which allows an insurer to limit an action against it certainly indicates that the public policy of Kentucky favors such limitations.

12

577 S.W.2d 17, 18 (Ky. App. 1978).

Kentucky courts have repeatedly dismissed breach of contract claims brought under insurance policies that contain the same language present in Farm Bureau's policy. For instance, in *Wooton v. Kentucky Farm Bureau Mutual Insurance Company*, the court considered the exact language from Farm Bureau's homeowner's insurance policy at issue here, which provides: "Suit Against Us: No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." 2015 WL 860752, at *2. The court upheld the trial court's finding that the plaintiff's action was barred by the contractual limitations clause, noting that "one year was not an unreasonably short time to require that a suit be commenced." *Id*; *see also Gibbons v. Kentucky Farm Bureau Mut. Ins. Co.*, No. 2014-CA-001241-MR, 2016 WL 3176440, at *2 (Ky. App. May 27, 2016). Because identical one-year limitations periods have been upheld as reasonable by Kentucky courts, Farm Bureau's limitations provision here should likewise be considered a reasonable shortening of the limitations period, particularly when the "public policy of Kentucky favors such limitations." *Webb*, 577 S.W.2d at 18.

In response, Canary argues only that it is not bound by the limitations provision because Canary is an assignee rather than a direct party to the contract. [DE 8 at unknown PageID #, document p. 11]. Canary asserts that because there is no direct agreement between Canary and Farm Bureau, it is not bound by the terms of the policies under which it is suing Farm Bureau. [*Id.* at 12]. Rather, Canary claims that as an assignee it "stands in the shoes of the homeowners as the assignee for the limited purpose of collecting monies legally owed," and should instead be bound by the standard ten-year statute of limitations [*Id.*]. Contrary to Canary's claim that assignees are not bound by such contractual provisions, Kentucky law asserts that assignees "acquire[ ] no greater right than was possessed by [their] assignor[s], but simply stand[ ] in the shoes of the latter,

13

subject to all equities and defenses which could have been asserted against the chose in the hands of the assignor at the time of the assignment.*" Whayne Supply Co. v. Morgan Const. Co.*, 440 S.W.2d 779, 782 (Ky. 1969). As a result, Canary is bound by all defenses that could have been asserted against the homeowners/assignors. This includes the limitations period set forth in the contract, which constitutes a valid shortening of the statutory limitations period under Kentucky law.

Further, it is clear from the face of Canary's complaint that its action was not filed within this limitations period. Canary relies on Farm Bureau's policies as the basis for its breach of contract action, but then asserts that all loss occurred "[o]n or about December 11, 2021," more than one year before commencing this action [DE 1 ¶ 40]. If it is "'apparent from the face of the complaint that the time limit for bringing the claim[s] has passed,'" then the plaintiff, if he wishes to avoid dismissal, must "plead facts in avoidance of the statute of limitations defense." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). When "the allegations in the complaint affirmatively show that a claim is time-barred," then "dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). The allegations of the date of loss in Canary's complaint show that its claim is time-barred, and Canary has not pled facts opposing the limitations defense. As a result, and accepting the allegations in Canary's complaint as true, Canary's breach of contract claim must be dismissed as untimely under the one-year limitations period set forth in Farm Bureau's policy. Accordingly, the motion to dismiss as to Count 1 is granted.

### 4. UCSPA (Count 2)

Canary asserts that Farm Bureau, by refusing to furnish a copy of the insurance policy to Canary and "improperly handl[ing] . . . these cases for each assignor," violated UCSPA (Ky. Rev. Stat. § 304.12-230) and corresponding administrative regulations that set forth unfair property and casualty insurance claims settlement practices (806 Ky. Admin. Regs. 12:095 (2021)). [DE 1 ¶¶ 58–63]. Farm Bureau argues that this claim should be dismissed because Canary's assignments were invalid, and thus Canary lacks standing as "neither a first party insured nor a third party claimant." [DE 6 at 236]. Farm Bureau also appears to argue that the entirety of Canary's action—including the UCSPA claim—should be dismissed as time-barred under the contractual limitations period. [*Id.* at 237]. Finally, Farm Bureau asserts that Canary's claims must be dismissed because it engaged in price gouging and unfair trade practices, and Canary "cannot profit from its unlawful acts." [*Id.* at 228-31].

"The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is *contractually obligated* to pay." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000). In order to prevail on a UCSPA claim in Kentucky, a plaintiff must show:

> (1) *that the insurer was obligated to pay the claim under the terms of the policy*;
> (2) that the insurer lacked a reasonable basis in law or fact for denying the claim; and (3) that the insurer knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Scott v. Deerbrook Ins.*, 714 F. Supp. 2d 670, 676 (E.D. Ky. 2010) (emphasis added) (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)).

At the outset, the Court notes that Farm Bureau appears to have waived its argument that it has no contractual obligation to pay because it has admitted to already paying Canary for a

portion of the claims. [DE 6 at 226 ("While Plaintiff has received payments from KFB for some services, Canary wants to recover the full gouge of its bills.")]. In other words, while Farm Bureau attempts to argue that the assignments are void, it has apparently accepted the assignments as valid and fulfilled part of its obligation under the assignments. Even if that were not the case, the allegations in Canary's complaint, along with the attached assignments, establish a plausible claim that the homeowners effectively assigned their benefits to Canary. As the Court has already noted, the assignments state "[t]his is an assignment of a claim for damages for Emergency Tree Work" and "the Assignee may in its own name and for its own benefit prosecute, collect, settle, compromise, and grant release of said claim as in its sole discretion deems advisable." [DE 1-2 – DE 1-16]. These provisions of the assignment explicitly transfer the benefits under the homeowners' insurance policies to Canary.

While Farm Bureau correctly notes that another portion of the assignment oddly states that "[t]he Assignor hereby transfers to [t]he Assignee . . . all claims . . . which the Assignee has or may have against Farm Bureau," this statement does not render the assignment invalid as a matter of law. Under Kentucky law, an unambiguous contract "will be enforced strictly according to its terms," while ambiguous contracts require the court to determine "'the intention of the parties from the contract as a whole'" and "'consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written,' by evaluating extrinsic evidence as to the parties' intentions." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (quoting *Whitlow v. Whitlow*, Ky., 267 S.W.2d 739, 740 (1954)). In other words, in interpreting an ambiguous contract, the court must resort to factual evidence outside the plaintiff's complaint. Such an undertaking is not appropriate at the motion to dismiss stage. "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Hazard*

16

*Coal Corporation v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010). The specific language of the assignment that Farm Bureau takes issue with is—at worst—ambiguous, meaning extrinsic evidence is required to determine the parties' intentions and dismissal is not appropriate at this juncture.

Furthermore, while Canary's breach of contract claim could be dismissed as time-barred due to the contractual limitations period, it is not clear that the UCSPA claim is similarly time-barred. Other courts have recognized that the determination that a breach of contract claim is procedurally barred does not equate to a determination that a UCSPA claim is barred. For instance, in *Tennant v. Allstate Insurance Co.*, the court found that a plaintiff's breach of contract claim was time-barred under the one-year contractual limitations period but that the claim under the Kentucky UCSPA could move forward when there had been "no finding that [the insurance company] was not obligated to pay the [plaintiff's] claim under the express provisions of the policy." No. CIV.A. 04-54, 2006 WL 319046, at *8 (E.D. Ky. Feb. 10, 2006); *see also Barjuca v. State Farm Fire & Cas. Co.*, No. 5:11-CV-380-JMH-REW, 2013 WL 6631999, at *9 (E.D. Ky. Dec. 17, 2013). In other words, a plaintiff may still argue that an insurer had an obligation to pay the claim under the terms of the policy for purposes of establishing a UCSPA violation even if the underlying claim is time-barred. *See Tennant*, 2006 WL 319046, at *8.

Finally, Farm Bureau's argument that Canary acted unlawfully rests on facts and conjectures that go beyond Canary's complaint. In support of its argument that Canary was price gouging, Farm Bureau asserts, first, that the price Canary charged for its tree removal service violates the Governor's December 2021 executive order, which prohibited the sale of services "at a price grossly in excess of the price prior to December 11, 2021." [DE 6 at 225]. Farm Bureau also asserts that "[c]harging over $462,810.24 for tree removal services to fifteen Kentucky

17

citizens" constitutes an "unfair" trade practice under Ky. Rev. Stat. 367.170(1). [*Id.* at 230]. Thus, Farm Bureau contends that the Court cannot allow Canary to benefit from its unlawful acts by way of this lawsuit. [*Id.* at 230–31]. Whether Canary charged prices "in gross excess" of those charged prior to the state of emergency is not a proper question at the motion to dismiss stage because it rests on facts outside the plaintiff's complaint, such as the standard price for tree removal services. As such, the Court will not entertain this argument.

In asserting that Farm Bureau has violated UCSPA, Canary alleges that (1) Canary is a "First Party Claimant" as defined in the 806 Ky. Admin. Regs. 12:095 § 1(6), (2) Farm Bureau is an "Insurer" as defined in 806 Ky. Admin. Regs. 12:095 § 1(7), (3) Farm Bureau refused to provide a copy of the insurance policy to Canary in an attempt to conceal benefits from a known assignee, and (4) Farm Bureau established a "pattern of wrongful denial." [DE 1 ¶¶ 58-62]. Canary has thus included allegations in its complaint sufficient to state a plausible claim for relief under UCSPA. Accordingly, the motion to dismiss as to Count 2 is denied.

### C. Jury Division Assignment

Recognizing that the homeowner/assignors' properties are located in this Court's Paducah division and that Farm Bureau's filings were captioned for the Paducah division, the Court requested that the parties' supplemental briefs addressing whether the case should be transferred to the Paducah division. [DE 24 at 504–05]. Farm Bureau now argues that the case should be transferred to the Paducah division given that all the properties at issue are located there, [DE 26 at 516], while Canary states that it will defer to the Court's decision. [DE 25 at 510].

A new civil case will typically be assigned to the jury division where the defendant resides. *See* LR 3.2(a)(1). "If a corporation does business throughout the district and has no operation which is its principal place of business . . . the action is assigned to the jury division in which a

18

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." LR 3.2(d). Notwithstanding the initial assignment, a case "may, in the discretion of the Court, be transferred from the jury division in which it is pending to any other division for the convenience of the Court, parties, witnesses, or in the interest of justice." LR 3.2(f); *see also* 28 U.S.C. §§ 1404(a)–(b), 1406(a); 14D Wright & Miller's Federal Practice & Procedure § 3809 (2025).

This case was originally assigned to the Louisville division because that is where Farm Bureau resides. [DE 26 at 516]. While the insureds' properties are located in Paducah, the Defendant is headquartered in Louisville and the insureds are not direct parties to this action. In addition, transferring the case would result in an increased administrative burden on the Court, while keeping the case in Louisville will aid in the efficient resolution of this case. The Court thus finds that the interests of justice would best be served by proceeding with the case in the Louisville division.

### III.   CONCLUSION

Accordingly, the Court, having considered the parties' motions and related filings and being otherwise sufficiently advised, **IT IS ORDERED** that Farm Bureau's motion to dismiss [DE 6] is **GRANTED in part** as to Count 1, and is **DENIED** as to Count 2.

Rebecca Grady Jennings, District Judge
United States District Court

September 18, 2025